IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN FELD,

                       Plaintiff,

    v.                                                **OPINION and ORDER**

DOUG TULINO,                                          23-cv-641-jdp

                       Defendant.

---

Plaintiff Steven Feld, proceeding without counsel, is a former employee of the United States Postal Service (USPS). Feld alleges that USPS failed to reasonably accommodate his knee injury and discriminated against him based on that disability, culminating in his termination. Feld proceeds on reasonable accommodation and disparate treatment claims under the Rehabilitation Act.

United States Postmaster General Doug Tulino moves for summary judgment. Dkt. 40.[1] The undisputed evidence shows that Local Postmaster James Brown accommodated Feld's medical restrictions, and that Feld ultimately resigned because he did not think he could do his job. Feld's co-worker may have harassed him about his knee injury, but there's no evidence that Brown or any other supervisory USPS employee was aware of that harassment. I will grant the motion and close the case.

---

[1] I substituted Tulino as defendant because the current head of the USPS is the proper defendant in a disability discrimination lawsuit against that agency, even though Tulino was not personally involved in the events of this case. Dkt. 37 at 1.

UNDISPUTED FACTS

I begin with a word about Feld's summary judgment opposition. On summary judgment, this court requires the moving party, here Tulino, to set out a statement of proposed facts with citations to admissible supporting evidence. See the attachment to Dkt. 27. The party opposing the motion, here Feld, must state whether each fact is disputed, and if it is disputed, support the opposition with a citation to admissible evidence. I will afford unrepresented parties some leeway, but all litigants must comply with the court's orders and rules. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020).

Tulino proposed 108 findings of fact in Dkt. 42. Feld did not directly respond to these as required. In his summary judgment opposition brief, Feld responded point-by-point to some of the statements in Tulino's brief. Dkt. 48. But most of Feld's statements are not supported by citations to admissible evidence. I accept Tulino's proposed facts as undisputed. *See Allen-Noll*, 969 F.3d at 349; *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

With that background, the following facts are undisputed.

In September 2022, Feld was hired as a city carrier assistant in the Wisconsin Rapids post office. Dkt. 42 ¶ 3. While delivering mail in mid-October 2022, Feld fell through a house's steps and injured his right knee. *Id.* ¶ 23. Feld suffered severely pulled ligaments in that knee, and he was off work until early November 2022. *Id.* ¶¶ 26, 30. Before Feld returned to work, he notified Postmaster Brown that he had a medical restriction to work eight hours and walk on level ground, but that he could stand and sort mail and deliver mail from a vehicle. *See id.* ¶ 39. A day after returning to work, which he did voluntarily, Feld told Brown that his restrictions would continue until November 11, 2022, and that they included limiting his

lifting to a maximum of 20 pounds. *Id.* ¶¶ 41, 56. Brown told Feld not to work beyond any doctor's restrictions, and Feld never told Brown that he had to work beyond them. *Id.* ¶ 45.

From sometime in early November to early January 2023, Feld's typical day involved sorting and delivering mail for an assigned route, then returning to the post office to collect packages to deliver from a vehicle for other routes *Id.* ¶ 57. Feld frequently worked extra hours to earn overtime in that period and, even though he walked with a limp, he did not use any accommodations to do his job. *Id.* ¶¶ 58–59, 62, 65. Feld regularly handled 35-pound trays of mail and packages weighing up to 65 pounds. *Id.* ¶ 107.

On January 6, 2023, Feld did not complete an assigned route on time, and other carriers had to help him complete the route that evening. *Id.* ¶ 69. Senior Carrier Dawn Woloszyn, who did not supervise Feld, yelled at him in public and when they returned to the post office about his inability to complete his routes on time. *Id.* ¶¶ 70–71. Woloszyn's actions upset Feld so much that he told his supervisor that he needed some time off and that he would have to discuss the incident with Brown. *Id.* ¶ 72.

Feld did not report to work after the incident or call Brown, and he wouldn't answer Brown's calls. *Id.* ¶¶ 74–77, 80–81, 83, 87, 97. Two days after the incident, Feld asked Woloszyn to tell Brown that he had "had enough" and was not "up to the level of demand of the work." *Id.* ¶ 79 (alteration adopted). The next day, Brown was informed that Feld intended to resign because he didn't think that he could do his job. *Id.* ¶ 82. Brown emailed Feld a resignation/transfer form and asked him to fill it out and return it, but he did not threaten to fire Feld. *Id.* ¶ 85.

Feld emailed Brown five days after the incident, asking for information about a potential rural carrier assistant position. *Id.* ¶ 88. Feld expressed regret about not being able to do the

3

city carrier assistant position, and he said that he would return the resignation form soon, which he never did. *Id.* ¶¶ 90, 93. Feld intended that email to serve as his resignation, and Brown understood it that way. *Id.* ¶¶ 91–92.

Two days later, Feld confirmed his resignation in an email to Brown. *Id.* ¶¶ 102–03. Feld also said that he had applied for a position as a rural carrier assistant at the Wisconsin Rapids office, though he hoped to be transferred to the Nekoosa office because he didn't want to work with Woloszyn. *Id.* ¶¶ 98–100. Brown processed Feld's separation from the USPS as a voluntary resignation so that he could seek other employment with that agency, including the rural carrier assistant position that he had mentioned. *Id.* ¶¶ 105–06.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Feld proceeds on disability discrimination claims under the Rehabilitation Act based on two theories: failure to provide a reasonable accommodation and disparate treatment. Feld bases the reasonable accommodation claim on the allegation that he should have received light duty to accommodate his knee injury and the absence of that accommodation stopped him from meeting the demands of his job, leading to his termination. *See* Dkt. 13 at 1, 3. Feld bases the disparate treatment claim on the allegation that Brown fired him to cover up the fact that he was working more than his medical restriction allowed. *See id.* at 1–3. These claims arise under the Rehabilitation Act, and they are governed by the same standards as claims under the Americans with Disabilities Act. *Vargas v. DeJoy*, 980 F.3d 1184, 1188 n.4 (7th Cir. 2020).

### A. Reasonable accommodation claim

To prevail on a reasonable accommodation claim, Feld must show that: (1) he was a qualified individual with a disability; (2) defendant knew of his disability; and (3) defendant failed to reasonably accommodate his disability. *See Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). The third element is dispositive.

A reasonable accommodation is one that allows the disabled employee to "perform the essential functions of the employment position." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017). Feld has the initial burden to show that he sought an accommodation that was "reasonable on its face." *Yochim v. Carson*, 935 F.3d 586, 592 (7th Cir. 2019). A "reasonable accommodation is connected to what the employer knows about the employee's precise limitations." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009). An "employer may not be obligated to provide a specifically requested . . . accommodation unless the employer is made aware of its medical necessity to the employee." *Id.*

Feld told Brown that, until November 11, 2022, he had a medical restriction to work eight-hour days, walk on level ground, deliver packages from a vehicle, and lift a maximum of 20 pounds. These accommodations appear reasonable on their face. But Brown accommodated all of them. Brown told Feld not to work beyond any doctor's restrictions, and Feld never told Brown that he had to work beyond them. Brown believed that Feld was complying with any medical restriction on his work. Dkt. 42 ¶ 46. Feld hasn't come forward with any evidence that his medical restrictions weren't being accommodated before November 11, 2022, let alone that Brown was aware of any failure to accommodate them. Nor is there any evidence that, before or after that date, Feld requested any other accommodation for his knee injury. No reasonable juror could find that Brown—or any other supervisory USPS employee—failed to reasonably

5

accommodate Feld's knee injury. I will grant summary judgment to defendant on the reasonable accommodation claim.

## B. Disparate treatment claim

Feld also proceeds on the allegation that Brown fired him for pretextual reasons to conceal the disparate treatment that Feld received. To prevail on a disparate treatment claim, the Feld must show, among other facts, that he suffered an adverse employment action solely by reason of his disability. *See Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022). It's undisputed that Feld resigned, which makes it hard for Feld to show that he suffered an adverse employment action. At summary judgment, Feld shifts his theory, contending now that he resigned due to a hostile work environment that Woloszyn "stirred up." *See* Dkt. 48 at 13. But a "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

But even if I allowed Feld to proceed under a hostile work environment claim, that claim would fail on the merits. To prevail, Feld would have to show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his knee injury; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019). Regarding the fourth element, employer liability, "employers are strictly liable for harassment committed by supervisors, but liable for harassment by co-workers only if the employer was negligent either in discovering or remedying the harassment." *Id.* The issue of employer liability is dispositive.

It's undisputed that Woloszyn was not Feld's supervisor. Dkt. 42 ¶ 71. Even if Woloszyn was harassing Feld based on his knee injury, there's no evidence that Brown or any

6

other supervisory official knew about the harassment, or was negligent in discovering or remedying it. Feld stopped reporting to work immediately after the incident with Woloszyn, and there's no evidence that Brown or any other supervisor was aware of any disability-based harassment that had occurred before then.

Furthermore, even if Feld's separation from the USPS counted as an adverse employment action, there's no evidence that he was treated different than other employees at the Wisconsin Rapids office—apart from Brown's efforts to accommodate his knee injury. *See* Dkt. 42 ¶¶ 14, 32, 44–49. There's no evidence that intentional discrimination caused the separation. Feld says that Brown asked him "how he was supposed to answer the questions issued from the Board of Governors of the USPS about [Feld's] working as a [city carrier assistant] while on doctor's restrictions for working." Dkt. 49 ¶ 3. Brown's expression of concern that the Board of Governors might disapprove of Feld's working with a knee injury does not suggest discriminatory intent.

Feld also says that his separation documents included the false statement that he resigned because he could not get along with others. *See id.* ¶ 2. But the undisputed evidence shows that, immediately before his resignation, Feld's relationship with Woloszyn had deteriorated. Feld hasn't shown that this statement was false, much less that it proves discriminatory intent.

No reasonable juror could conclude that Feld's separation from the USPS was solely by reason of his disability. I will grant summary judgment to Tulino on the disparate treatment claim.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment, Dkt. 40, is GRANTED.

2. The clerk is directed to enter judgment and close the case.

Entered April 18, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge